UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JIMMY R. GARCIA,                                    )
Institutional ID No. 1542228,                       )
SID No. 4033193,                                    )
Previous TDCJ Nos. 718029, 1306314,                 )
                                                    )
                        Plaintiff,                  )
                                                    )
v.                                                  )          CIVIL ACTION NO.
                                                    )          5:13-CV-146-BG
RICK THALER,                                        )          ECF
Director TDCJ-CID, *et al.,*                        )
                                                    )
                        Defendants.                 )

## REPORT AND RECOMMENDATION

Appearing *pro se* and *in forma pauperis*, Plaintiff Jimmy R. Garcia, an inmate incarcerated

by the Texas Department of Criminal Justice (TDCJ), filed this action pursuant to 42 U.S.C. § 1983.

Garcia complains that Defendants, employees of TDCJ, violated his constitutional rights during his

confinement at the Preston E. Smith Unit (Smith Unit).  Specifically, Garcia claims that Defendants

failed to protect him by housing him with Mexican Mafia gang members, despite the fact that he is

a former member of the Mexican Mafia and now an enemy to current gang members.

The United States District Court transferred this case to the undersigned United States

Magistrate Judge for further proceedings.  The undersigned thereafter reviewed authenticated

records from TDCJ and conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82

(5th Cir. 1985).  The undersigned provided Garcia with an opportunity to consent to the jurisdiction

of the United States Magistrate Judge, but Garcia did not consent.  Pursuant to the order of transfer,

the undersigned now files this Report and Recommendation and recommends that this action be

dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

## I.      Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B); 1915A (2013).  A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories.  *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).  In reaching a frivolous determination, the court may consider reliable evidence such as the plaintiff's allegations, sworn testimony obtained at a *Spears* hearing, and authenticated prison records.  *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991).

## II.     Discussion

At issue in this case is whether Defendants failed to protect Garcia from members of the Mexican Mafia gang.  An inmate's constitutional rights under the Eighth Amendment are violated when a prison official demonstrates "deliberate indifference" to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  Prison officials have a duty to protect inmates from violence at the hands of other prisoners. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006).  Prison officials must guard not only against current threats but also must protect against sufficiently imminent dangers that may cause harm in the future.  *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995).  However, not every injury suffered by an inmate at the hands of another prisoner translates into constitutional liability.  *Id.* at 400.  The question of whether

2

the condition at issue constitutes a substantial risk of serious harm is examined contextually with due regard to contemporary societal standards of decency. *Id.* at 401.

To establish a failure to protect claim, a plaintiff must show that (1) he was subjected to conditions posing a substantial risk of serious harm, and (2) prison officials were deliberately indifferent to his need for protection. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). Deliberate indifference accounts for more than mere negligence; the prison official must both be subjectively aware that the prisoner faces a substantial risk of serious harm and also must disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 847. In order to show that a prison official was aware of the risk, a plaintiff may rely upon circumstantial evidence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). A fact finder may determine that a prison official knew of a substantial risk of harm because the risk was obvious. *Horton*, 70 F.3d at 401. No liability exists, however, if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

In Garcia's numerous grievances, he states that his life is in danger from the Mexican Mafia. He points to an incident that occurred in 1997 when he was stabbed 25 times—allegedly by members of the Mexican Mafia—while housed at the Terrell Unit. Although originally classified as a member of Tango San Antonio by prison personnel due to Garcia's self-admission on a Security Threat Group Validation Form in 2009 and the presence of tattoos evidencing the same, Garcia hinted during a later interview that he took these actions in an attempt to hide from the Mexican Mafia.

Garcia claims that Defendants, employees of TDCJ and officers at the Smith Unit, failed to protect him. Garcia was housed at the Smith Unit prior to August 13, 2012, after which time he was

3

housed at the Montford Unit while admitted to Crisis Management for mental health concerns.  On

September 5, 2012, Garcia completed an Offender Protection Investigation (OPI) form while at the

Montford Unit.  He claimed that all gang members—regardless of association—at the Smith Unit

were after him due to his current conviction of indecency with a child, and he requested placement

in administrative segregation.  He noted, however, that he was not in fear of any danger while at the

Montford Unit.  Security Threat Group (STG) Officer Defendant Martinez interviewed Garcia, who

alleged that his cell mate threatened him.  Garcia claimed his cell mate was a member of the

Mexican Mafia and was ordered to assault him.  In communications to Major Williams of the Unit

Classification Committee (UCC), Martinez stated that Garcia's cell mate was a known member of

the Tri-City Bombers and no information from his office supported Garcia's allegations that the cell

mate was a member of the Mexican Mafia.

In another grievance written on September 9, 2012, Garcia complained that Defendant

Sergeant Rodriguez wanted to confirm him as a member of Tango San Antonio, despite Garcia's

statements that he was not a member of that gang, but was instead an ex-member of the Mexican

Mafia.  He again claimed that he was in danger at the Smith Unit and requested protective custody.

After discharge from the Montford Unit on September 14, Garcia was temporarily transferred to the

Smith Unit and interviewed regarding his allegations on September 18, and another OPI form was

completed in which Garcia listed "Pancho" and "Cruz" as assailants.  After the interview, Garcia

was transferred to Clements Unit Crisis Management, but he returned to the Smith Unit on

September 26,  after being discharged.  A UCC review of the investigation was completed in early

October, and the reviewing officer noted that Garcia could not provide any additional evidence

pertinent to his allegations and found no evidence to support Garcia's claims.  In November 2012,

Garcia was transferred from the Smith Unit to the Clements Unit.  Although he continued to move back and forth from the Montford Unit when admitted to Crisis Management, he was not again housed on the Smith Unit after November 1, 2012.

Despite his new housing assignment, Garcia continued to express the same concerns to prison officials.  In December 2012, Garcia filed another grievance form reiterating that he renounced his membership in the Mexican Mafia and claiming that there was a hit out on him. Garcia wrote that he previously expressed his concerns to Defendant Sergeant Rodriguez and requested placement in a single cell.  The administrative response to Garcia's grievance cited the prior investigation and UCC review completed in October, again noting that no evidence substantiated Garcia's claims.   In June 2013, the Safe Prisons Office reviewed the prior investigation, interviewed Garcia, investigated the names Garcia previously mentioned, and found that the proper procedures were followed and no new information warranted another OPI or UCC review because Garcia's allegations were repetitive.  Garcia, however, filed another grievance later in June reasserting his fears that he would be assaulted by the Mexican Mafia.  Another investigation was opened by a staff member at the Clements Unit who requested documentation from TDCJ staff.

In response, the STG Office sent correspondence stating that while Garcia has tattoos indicating that he is a member of Tango San Antonio, Garcia said in an interview in 2009 that he joined the Mexican Mafia in 1995 while assigned to the Connally Unit.  The email also stated, however, that Garcia was never assigned to the Connally Unit and that he later admitted to joining Tango San Antonio at the Smith Unit.  In July 2013, another officer interviewed Garcia, but Garcia refused to cooperate with the investigation or provide a statement.  The officer noted that the STG Office was contacted, and the office had no evidence to confirm Garcia's affiliation with the

5

Mexican Mafia or the alleged hit out on him.  A UCC review of the investigation in August found that Garcia's claims were once again unsubstantiated.  *Cf.  Moore v. Lightfoot*, 286 Fed. App'x 844, 846 (5th Cir. 2008) (noting the classification committee found plaintiff's claims uncorroborated despite credible information that plaintiff was in danger, including the names of specific identifiable offenders threatening him).

In September 2013, the Clements Unit was notified that Garcia had written a letter to the Region Five STG Office claiming that his life was in danger at the Clements Unit.  The Clements Unit opened another OPI and Garcia was interviewed by the STG office.  Garcia stated during the interview that he had never been approached, threatened, or assaulted by any offender at the Clements Unit, and he did not know of any members of the Mexican Mafia who were assigned to the Clements Unit at that time.  Regardless, he expressed his fears that members of the Mexican Mafia might discover his identity and assault him.  TDCJ staff contacted the Bexar County Southwest Fusion Center, where an employee stated by correspondence that Garcia is indeed an ex-member of the Mexican Mafia, and he was "Xed" out when he refused to carry out an assault in TDCJ.  The correspondence stated that the events took place in 2006 while Garcia was assigned to the Bexar County Jail.

An investigator then re-interviewed Garcia, who disclosed that he was coerced into signing the self-admission form that documented him as a member of Tango San Antonio.  Garcia  hinted that his tattoos were obtained to aid in concealing his identity from the Mexican Mafia.  The investigator confirmed that Garcia was assaulted with a homemade weapon approximately 25 times while assigned to the Terrell Unit but found no documentation that the assault was related to the Mexican Mafia.  The investigator further stated that nine confirmed ex-members of the Mexican

Mafia are currently assigned to the general population at the Clements Unit. The STG office concluded that Garcia was not in danger from any one offender or group, and the Clements UCC review board found insufficient evidence that Garcia needed protection and denied a unit transfer.

According to authenticated prison records, Garcia has repeatedly complained about his safety and requested placement in administrative segregation or transfer to the Montford Unit, regardless of his current unit of assignment. Garcia claims that living in the general population, as opposed to being placed with other "ex-gang members," causes him stress, gives him headaches, and forces him "to cut." Throughout 2011, 2012, and 2013, Garcia was in and out of various crisis management units following expressions of suicide and self-mutilation. However, on multiple occasions medical staff characterized him as a malingerer. A physician noted on a mental health discharge report on June 9, 2012: " He can function well on his unit. He is manipulative and he will try again to come to the Montford Unit, as he does not want to be on his [unit of assignment]." Additionally, a mental health care provider stated on a report dated February 3, 2012, that although Garcia reported hearing voices, his symptoms were not consistent with someone with a psychotic disorder because his thoughts were goal directed, clear, and logical.

At the *Spears* hearing, Garcia was slow to respond to questions and did not elaborate his answers beyond a few words. He stated that he sent a letter to TDCJ Director Defendant Thaler and he never received a response, but he provided no details as to his contact with the other four named defendants—Investigators Perez, Rodriguez, Martinez and Major Franko. He said only that he was threatened by other inmates and that the Defendants have not provided him with protection. He responded affirmatively when asked if he felt like his life was in danger at the Clements Unit and if he had received any threats at that unit; however, he did not provide any additional details. When

questioned regarding his desired relief, he stated that he would like to be moved out of his unit and transferred to an "ex-members unit."

To violate the Eighth Amendment, an official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Here, TDCJ staff at two different units investigated Garcia's claims on multiple occasions and found no evidence to substantiate his repeated allegations of life-threatening danger. Besides the incident in 1997, Garcia has not alleged that he or any other inmate has been the victim of gang-related violence at the Smith Unit or the Clements Unit. Furthermore, when given the opportunity to elaborate during his *Spears* hearing, Garcia did not mention any specific instances of being threatened or name any specific individual who threatened him. In fact, Garcia did not allege at the hearing or in his Complaint that any other inmates were even aware of his status as an ex-member of the Mexican Mafia. *See Longoria*, 473 F.3d at 594–95 (reversing district court's denial of summary judgment when no evidence showed that the officers present at the inception of an attack had knowledge of plaintiff's activities as an informant); *Adames*, 331 F.3d at 514 (noting that plaintiff might be in danger if gang members learned that he divulged information to prison official; however, plaintiff failed to present any evidence that the prison official told anyone about the conversation).

Garcia has not shown that prison officials were aware of conditions that posed a substantial risk of serious harm or that they disregarded any such risk. *See Farmer*, 511 U.S. at 837. On the contrary, prison officials diligently screened the information provided by Garcia—despite the lack of specificity—and researched his prior housing assignments and gang affiliations. In doing so, officials were unable to uncover any relevant information indicating that Garcia was in danger from

8

other inmates while assigned to the Smith Unit or to the Clements Unit.  Furthermore, an inmate's disagreement with his custodial classification does not give rise to a constitutional claim.  *See Neals*, 59 F.3d at 533.  In sum, Garcia has failed to allege that any of the Defendants violated his constitutional rights.

## III.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Garcia's Complaint and all claims therein with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and deny any pending motions.

Dismissal of this action should count as a qualifying dismissal—"a strike"—for purposes of the three strikes provision of the Prison Litigation and Reform Act (PLRA).  Further, the dismissal should not release Garcia or the institution of his incarceration from the obligation to pay the previously imposed filing fee.  *See Williams v. Roberts*, 166 F.3d 1126, 1128 (5th Cir. 1997).  Garcia must therefore continue to pay the filing fee in monthly installments as ordered in the PLRA Filing Fee Order entered in this case.

## IV.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the

magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:          February 14, 2014.

NANCY M. KOENIG
United States Magistrate Judge